*Ky*

FILED

MAR 24 2011
*MAR 24 2011*
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

BRUCE ABRAHAMSON, M.D., )
             **Plaintiff,** )    **Case No.**
   -v.- )
   )
   )
**ILLINOIS DEPARTMENT OF** )
**FINANCIAL & PROFESSIONAL** )
**REGULATION;** )    11CV2038
**STATE OF ILLINOIS;** )    JUDGE DOW JR.
**former Director of Illinois** )    MAG. JUDGE GILBERT
**Division of Professional Regulation** )
**DANIEL E. BLUTHARDT;** )
**former or sitting Medical** )
**Licensing Board Members** )
**RONALD L. JOHNSON, M.D.,** )
**WILLIAM J. REDEMACHER, D.C.,** )
**BENNETT LEVENTHAL, M.D.,** )
**JANE JACKMAN, M.D.,** )
**DENIS D. PALMER, D.O.** )
**JOHN/JANE DOE NO. 1 - UNKNOWN** )
**MEDICAL LICENSING BOARD** )
**MEMBER -SIGNATURE** )
**SCRIBBLED "BLAB",** )
**ROBERT M. VANECKO, M.D.,** )
**ET. AL. UNKNOWN MEDICAL** )
**LICENSING BOARD MEMBERS** )
**THAT SIGNED/SUPPORTED** )
**DEC. 9, 2005 SUPPLEMENTAL** )
**RECOMMENDATION TO IDPR** )
**DIRECTOR;** )
**and former Illinois Governor** )
**ROD R. BLAGOJEVICH,** )
   )
           **Defendants.** )

### COMPLAINT

NOW COMES THE PLAINTIFF, BRUCE ABRAHAMSON, M.D., and

complains of the Defendants as follows:

1

### Introduction

1.  A full understanding of Plaintiff's odyssey of Defendants depriving Plaintiff of his constitutionally protected due process and property right thereby resulting in Plaintiff being deprived of his livelihood as a physician and surgeon as unnecessarily inflicted upon Plaintiff by Defendants is delineated hereinafter. This is the basis for Dr. Abrahamson's federal lawsuit and necessitates an understanding of Plaintiff unnecessarily being deprived of his professional livelihood and thereby Plaintiff's 24-year quest to obtain a medical license in Illinois and Defendants unnecessarily impeding Plaintiff in every conceivable manner possible.

2.  The violations that led to Plaintiff's ordeal were the result of misconduct by the Defendants, who deprived him of his constitutional right to a livelihood and conspired to build unnecessary dilatory tactics resulting in appreciable delays (in processing Plaintiff's recent application for his medical license) to Plaintiff's detriment, Defendants' perpetual refusal and failure to act in a prompt manner, Defendants refusing to process Plaintiff's medical license application, and Defendants making erroneous allegations against Plaintiff irrespective of his innocence. Dr. Abrahamson has continually maintained his innocence throughout this ordeal and has attempted in every conceivable manner to have Defendants acquiesce from their harm inflicted upon him - to no avail.

### Jurisdiction and Venue

3.  This Court has jurisdiction of the subject matter of this action pursuant to: 42 U.S.C. section 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). Supplemental jurisdiction to entertain state law claims arises under 28 U.S.C. section 1367.

4. Venue in the action is properly in this district, pursuant to 28 U.S.C. § 1391 (b), on the grounds that a defendant may be found and reside in this district, and a substantive part giving rise to the events alleged, occurred in this district.

## Parties

5. Plaintiff, Dr. Bruce Abrahamson is a resident of the City of Chicago, State of Illinois. He was unconditionally licensed to practice medicine in the State of Illinois from 1981 to 1982 practicing medicine and surgery in all of its branches under supervision while a surgical resident at the Rush Medical Center in Chicago, IL. Thereafter Dr. Abrahamson was licensed in medicine and surgery in all of its branches both in Maryland and Massachusetts, respectively from years 1982 through 1984 while at the University of Maryland Medical School Medical Center and the Havard Medical School Medical Center performing medicine and surgery in all of its branches as an exemplary physician with laudatory letters of recommendation and commendation from his supervisory colleagues in all branches of surgery at both the Maryland and Harvard Medical Centers. Plaintiff was labeled by Defendants as somehow not meeting a moral threshhold of the Illinois Medical Practice Act after Plaintiff being fully forthcoming and submitting an addendum under oath to his application for Illinois medical licensure in 1986 as guided by his attorneys at Winston & Strawn.

6. The Illinois Department of Finanancial and Professional Regulation ("**IDFPR**") is a governmental entity operating within the State of Illinois which consists in pertinent part of the Illinois Division of Professional Regulation (**"IDPR"**). The Division of Professional Regulation is responsible for the acts of its agents and employees while acting within the scope of their employment. At times relevant to this action the State of Illinois was the employer of Defendants Daniel E. Bluthardt, Ronald

3

L. Johnson, M.D., William J.Rademacher, D.C., Jane Jackman, M.D., Denis D. Palmer, D.O, John/Jane Doe - Unknown Medical Licensing Board Member No. 1 - scribbled "Blab", Robert M. Vanecko, M.D., and all other unknown Medical Licensing Board Members signing and/or supporting the December 9, 2005 Supplemental Recommendation to the Director of the IDPR/Department, and Defendant, former Governor Rod Blagojevich, all are necessary parties to this lawsuit. **See: Exhibit A** — which is the December 9, 2005 Supplemental Recommendation to the Director of the IDPR/Department (attached to the back hereto).

7. The following Defendants Daniel E. Bluthardt, Ronald L. Johnson, M.D., William J.Rademacher, D.C., Jane Jackman, M.D., Denis D. Palmer, D.O., John/Jane Doe No. 1 — Unknown Medical Licensing Board Member — Signature scribbled "Blab", Robert M. Vanecko, M.D., and all other unknown Medical Licensing Board Members signing and/or supporting the December 9, 2005 Supplemental Recommendation to the Director of the IDPR — ("**Department**") - See: **Exhibit A**, and Defendant, former Governor Rod Blagojevich, are sued in their individual capacities, and acted under color of law and within the scope of their employment during the actions which are part of this lawsuit. Upon information and belief the Defendant individuals captioned above and hereafter acted in a malicious, willful and/or wanton manner toward Plaintiff and were involved in all or some of the following: unnecessarily acting in a dilatory manner in acting upon the Plaintiff's petition for his medical license discussed herein, and; the unnecessary perpetual imposition of Section 60/3 of the IL. Medical Practice Act upon Plaintiff while Defendants failed to provide a fair and prompt hearing for Dr. Abrahamson in the application process, and; unilaterally introducing erroneous inflammatory prejudicial evidence during Plaintiff's application for his

4

medical license in an unlawful attempt to wrongfully further withhold Plaintiff's ability to practice his profession, and; concocting evidentiary fabrications (further elaborated upon below), and; other tortious obdurate misconduct directly relating to Defendants unnecessarily further prolonging imposition of a "de facto" suspension and unduly harsh sanction upon Plaintiff by precluding Plaintiff from being able to practice medicine thereby precluding Plaintiff from a livelihood, and; the taking of Dr. Abrahamson's liberty and property right to a livelihood for approximately 25 years, and; facilitating the imposition of unnecessarily imposing further impediments upon Plaintiff to impede his ability to practice medicine, and; failing to provide a fair and prompt hearing for Dr. Abrahamson in the second and subsequent "hearings" pertaining to Plaintiff's most recent application (futher elaborated upon below), and; the contesting of Dr. Abrahamson's qualifications in alleged unilateral "hearings" conducted by the Department, and; Defendants without plausible explanation during Plaintiff's most recent application for a medical license refusing to issue Plaintiff his license on a restricted or supervisory basis, and; the repeated intentional refusal by Defendants to comply in a prompt and fair manner with Chancery Court ordered remands to afford Plaintiff an unbiased hearing without appreciable delay, and; the Defendants causing frivolous dilatory perpetual remands unnecessarily by their repeated refusal to comply with both Court ordered remands and with the IL. Medical Pract. Act, and; Defendants purposefully committing recidivism of unnecessarily imposing Section 60/3 of the IL. Med. Pract. Act upon Plaintiff — and thereafter Defendants attributing Plaintiff's compliance with Defendants' imposition of Section 60/3 upon him (in other words Plaintiff refraining from practice), thereafter Defendants utilizing their Draconian sanction (imposition of Sect. 60/3 against Plaintiff) as a further illicit means to inflict

5

further harsh "punishment" against Plaintiff by thereby further withholding his property

right to a livelihood; and Defendants' other misconduct alleged herein:

a. Daniel E. Bluthardt, at times relevant to this action, was the chief administrator for the IL. Division of Professional Regulation Office (a unit of the IDFPR) employed by the Department, and was responsible for the policies, practices, and customs of that office. Although Bluthardt was never part of the prosecution team in this case, on information and belief, discovery will show that Bluthardt was personally involved in directing or consenting to the use of prejudicial evidence against Dr. Abrahamson as well as the Department using dilatory tactics as furthering means of inflicting impediments "under color of law" to withhold Dr. Abrahamson's medical license and preclude him from a livelihood. Also on information and belief, discovery will show that Bluthardt was personally involved in the targeting of Dr. Abrahamson for prosecution and personally approved of the use of the powers of his office to delay and withhold Dr. Abrahamson's medical license with trumped up charges grounded upon specious rationale and the suppression of exculpatory evidence as it pertains to the Department's normal policy and procedures that pertain to the imposition of sanctions against medical practitioners. Bluthardt followed this policy in order to derail Plaintiff from a livelihood anticipating this would preclude Plaintiff from ability to pursue damages against the Defendants and that philosophy permeated the Department Office at the relevant times and facilitated the misconduct on the part of the other named Defendants. Also on information and belief, discovery will show that Bluthardt personally reviewed, consented, and condoned the misconduct alleged in this complaint in connection with his decision to seek and pursue prosecutorial prolonged hearings, repetitive remands, and the imposition of further unnecessary sanctions against Dr. Abrahamson. The allegations against Bluthardt relate only to the time period while he was the acting Director of the Division of Professional Regulation, a unit of the IDFPR.

b. Dr. Ronald L. Johnson, Dr. William J. Rademacher, Dr. Bennett Leventhal, Dr. Jane Jackman, Dr. Denis D. Palmer, John Doe No. 1 - an unknown Medical Licensing Board Member - scribbled "Blab", Dr.Robert M. Vanecko, all other unknown Medical Licensing Board Members signing/supporting December 9, 2005 Supplemental Recommendation to Director of IDPR; at all times relevant to their involvement in this action, were Medical Licensing Board Members (collectively hereafter referred to as the **"MLB Members"**) for the IL. Division of Professional Regulation Office ("IDPR" is a unit of the "IDFPR") employed by the Department who unnecessarily recommended the denial of Dr. Abrahamson's medical license under specious pretense which the Chancery Court previously ordered the Defendants to cease and desist from doing. MLB Members repeatedly refused to abide by Chancery Court Orders and Defendants' perpetual misconduct as maintained in this cause of action resulted in further intentional dilatory tactics resulting in appreciable delays purposefully caused by Defendants in processing Plaintiff's application which appreciable delays and dilatory tactics by Defendants unnecessarily inflicted further unnecessary punishment upon Plaintiff and the deprivation of Plaintiff's livelihood, upon Plaintiff, by the Defendants - resulting in the further imposition of the punitive effect of Section 60/3 of the IL. Med. Pract. Act upon Plaintiff, and the impaneling by Defendants of a prosecution team resulting in further prolonged dilatory hearings caused by Defendants in front of an Administrative Law Judge ("**ALJ**") employed by the Department with the

6

Department's intent of continuing to derail Dr. Abrahamson's most recent medical license application. Defendant MLB Members are being sued for their role in an investigative and advisory capacity. On or about December 9th, 2005, Defendant MLB Members participated in a MLB hearing which led to a MLB Recommendation resulting in the further deprivation of Plaintiff's medical license on impermissible grounds — as previously determined by the Chancery Court. Following this Recommendation, further resulting dilatory tactics were inflicted upon Plaintiff Abrahamson by; the MLB Members, the Director, and the Department necessitating lengthy prolonged days of hearings in front of an ALJ employed by the Department often without any MLB Member present to directly witness the veracity of the Plaintiff and thereby substituting the ALJ's credibility determination of Plaintiff Abrahamson's testimony, in lieu of the MLB's direct credibility determination, of Plaintiff's testimony. Dr. Abrahamson was initially interviewed by the MLB in considering his latest application. During this, the MLB Members, acting alone or together with other defendants, caused the Department to fabricate evidence pertaining to Plaintiff — erroneously stating the following; falsely stating that Plaintiff had not completed requisite residency training, falsely stating that Plaintiff had not completed requisite medical licensing exams, and falsely stating that Plaintiff had not kept abreast of current medical trends, (all contrary to the Departmental record) and thereafter penalizing Plaintiff for having adhered to refraining from the practice of medicine and surgery (Sect. 60/3 of the IL. Med. Pract. Act) when the MLB Defendants inflicted this "de facto" sanction unnecessarily upon Plaintiff. These fabrications by the MLB Members led to the issuance of further dilatory remands to the Department, by the Chancery Court, led to the issuance of further dilatory remands to the Department, by the Director of the Division of Professional Regulation, led to the further imposition of Section 60/3 upon Dr. Abrahamson — causing further penal consequence upon Plaintiff. Thereafter, MLB Member defendants along with the other Defendants caused further lynching of Dr. Abrahamson by maintaining the Defendants' misconduct should be utilized as a further means to impose further sanctions, penalty, and punishment upon Dr. Abrahamson and as a means, contrary to the principle of Illinois "lost chance doctrine", to deprive Plaintiff of his livelihood during what should have, and could have been — the most productive and thereby lucrative years of Plaintiff's life.

## STATEMENT OF FACTS

8.     Plaintiff, Dr. Abrahamson has been applying to obtain a license to practice medicine in Illinois after he complied with the statutory requirements for medical licensure,   yet the Medical Licensing Board ("**MLB**"), the Director of the Illinois Division of Professional Regulation ("**IDPR**") and Directors of the IDPR (collectively, the **"Department"**), have perpetually continued to deny Plaintiff's fundamental constitutional right to practice his chosen profession. Plaintiff's most recent Application for medical licensure was presented to the Defendants (which consist of; members of the

7

Medical Licensing Board ("**MLB**"), the IDPR Director Bluthardt ("**Director**") and which resulted in a December 9, 2005 "Supplemental Recommendation" ("**Recommendation**") by the MLB to the Director resulting in the Director adopting the Recommendation which includes essentially repeating Plaintiff's residency training "for a minimum of 24 consecutive months of active training in a single program" and repeating sitting for the medical licensure exam, all of which Plaintiff already completed. Defendants have mandated Plaintiff repeat his entire post-graduate residency training; subsequent to Defendants having unnecessarily impeded Plaintiff's ability to practice his profession in an unreasonable manner, after having deprived Plaintiff unnecessarily from his livelihood for over two decades, and presently Defendants continuing their charade by further impeding Plaintiff from practicing his livelihood by Defendants stipulating further impediments and requisites under "color of law", such as; mandating Plaintiff complete 24 months of "consecutive" residency training at the same medical center for 24 months. Defendants also mandate Plaintiff repeat all of the medical licensure testing that he previously satisfied before he can even be eligible to apply for a medical license from the Department.

9. Plaintiff, Dr. Abrahamson, graduated from an Illinois-approved foreign medical school in 1981. He received sterling recommendations from his medical school professors, who described him as having "unusual ability and energy," and remarked that "it is not often that one encounters a young man like Bruce...a student of this caliber." He then passed the requisite examination (the "ECFMG test") for foreign medical graduates, as well as the Illinois-required three-day FLEX Exam. Dr. Abrahamson then completed his surgical residency at Rush Medical College's Rush-Presbyterian-St. Luke's Medical Center, the University of Maryland School of Medicine's Medical Center and his third senior year of training at the prestigious Harvard Medical School's Harvard Medical Center. It should be noted that only one year of residency was required in Illinois when Plaintiff applied for his medical license.

8

During these programs Dr. Abrahamson was successful in obtaining temporary medical licenses from the states of Maryland and Massachusetts, as well as Illinois. He was also successful in gaining the trust and respect of his fellow physicians, as evidenced by his many excellent recommendations submitted to the Department. The requirements for a temporary license in Illinois are analogous to the requirements for a full license. See 68 Ill. Adm. Code §1285.90 (2003). Most notably, under Ill. Adm. Code §1285.90 (b)(1), the temporary license applicant must provide proof of good moral character which Plaintiff, Dr. Abrahamson, was deemed to possess by the Department as he was issued an Illinois temporary medical license while practicing medicine and surgery as a resident in Illinois. Plaintiff also provided and demonstrated all other requisites for medical licensure in the State of Illinois including requisite documentation and evidence to satisfy not only requisite moral character to the Department at that time. See Ill. Admin. Code tit. 68 at §1285.90 (b)(1-11). Nevertheless, Plaintiff was denied a full medical license when he applied only a few years subsequent to Plaintiff's initial Illinois medical license after having completed two more years of surgical residency and after having completed all requisite medical licensure testing.

10. Dr. Abrahamson first filed an application to practice medicine in Illinois in June 1986. (A certified copy of the records and files from the Department/Defendants regarding this case shall be caused to be filed with this Court by Plaintiff). The Department denied Dr. Abrahamson's initial application for reasons unrelated to his ability to practice medicine. *See Abrahamson v. Illinois Department of Professional Regulation,* 153 Ill. 2d 76, 82, 606 N.E. 2d 1111, 1114 (1992).

11. In February 1988, the Medical Licensing Board recommended that Dr. Abrahamson's Application be denied on grounds *"of lack of moral and ethical judgment."* See: 153 Ill. 2d at 86, 606 N.E. 2d at 1116. The Director of the Department accepted the Recommendation, denied Dr. Abrahamson's Application, and ruled that he

9

could reapply in two years. See: 153 Ill. 2d at 87. As a result, Dr. Abrahamson was barred from practicing medicine under Section 3 of the Act.

12. In October 1988, Dr. Abrahamson filed a complaint in the Circuit Court of Cook County seeking administrative review of the Department's denial. The Circuit Court found the Department's finding to be erroneous, stating that the Department's findings were "'not of a magnitude that would support the finding that [Abrahamson] lacked good moral character.'" (quoting Circuit Court's decision). Accordingly, Judge Scotillo reversed the Department's decision and on August 29, 1989 ordered the Department to grant Dr. Abrahamson's medical license *__instanter__*. Pending an appeal of Judge Scotillo's order, the Department sought, and received, a stay of execution from the Illinois Court of Appeals, maintaining the bar against Dr. Abrahamson's practice of medicine.

13. Judge Scotillo's ruling in Dr. Abrahamson's favor was affirmed by the Illinois Court of Appeals. See Abrahamson v. Dep't of Prof'l Regulation, 210 Ill. App. 3d 354, 568, N.E.2d 1319 (1991). In affirming Judge Scotillo, the Appellate Court reasoned that the Department's concessions — that had the information in Dr. Abrahamson's addendum been conveyed as part of the information in Dr. Abrahamson's addendum been conveyed as part of the original Application, the information would *__not__* have been grounds for denying his license — made the misrepresentations and omissions in the original license application immaterial. *Id.,* 210 Ill. App 31 at 371-72, 568 N.E.2d at 1329-30. Further, the Court noted that Dr. Abrahamson had applied for his medical license in June 1986, that it had been denied in March 1988, and that Judge Scotillo's reversal had been stayed pending the Appellate Court's decision. The effect, the Appellate Court ruled, "has been the equivalent of a four year and eight month

10

suspension of the plaintiff's license. *He has been punished enough.*" *Id.,* 210 Ill.
App. 3d at 374-75, 568 N.E.2d at 1831-32. Rather than remanding the case for further
proceedings, the Court of Appeals merely vacated the stay of the lower Court's order, *id.,*
which it obviously hoped would result in a license issuing to Dr. Abrahamson, instanter
as originally ordered by Judge Scotillo. Further, despite the unanimous Appellate Court
Opinion, authored by Judge Ed Egan, the Appellate Court noted that Dr. Abrahamson's
due process rights had been severely trampled by the Department during Department
hearings citing examples in their Opinion. ** Once again, however, the Department
appealed, continuing the Department's bar to prevent Dr. Abrahamson from practicing
medicine, despite the fact that as the Appellate Court had duly noted, *Supra* — the
original two year stipulated suspension originally recommended by the Department and
accepted by the 1988 Director of the Department, Stephen Selcke, had already long run
and by the Department's appeals, this doubled the sanction upon Dr. Abrahamson,
resulting *in a four year and eight month suspension* of the plaintiff's license
when the Appellate Court rendered its Opinion. Despite the foregoing fact, the
Department was not satisfied and it again appealed refusing to issue Dr. Abrahamson
his license, apparently having animus because he had filed suit against the Department.

14. Ultimately, in November 1992, the Supreme Court of Illinois overturned the
lower court's decision, noting Dr. Abrahamson was allowed to re-petition the
Department for a medical license, as had originally been stipulated by the Department.
The Supreme Court noted that the Department Director had expressly allowed Dr.
Abrahamson to reapply two years following the date of the denial — September 11, 1990
— which date had "now long expired." *Id.* Thus, Dr. Abrahamson was free to reapply
and "if he satisfies the Department that he meets the statutory requirements for the

11

license, he, at that point, will receive it."

15. During the time the Department was considering Dr. Abrahamson's initial application and the time during which the Illinois courts were reviewing the Department's decision, the Department without plausible explanation - perpetually refused to issue Dr. Abrahamson a license to practice medicine in any capacity. The Department's decision triggered Section 3 of the Medical Practice Act, which strictly prohibited Dr. Abrahamson from practicing medicine or any of its branches. See 225 Ill. Comp. Stat. 60/3.

16. From early 1993 through June 1998, Dr. Abrahamson's lawyers were informed by the Department that it would utilize the original Application and considered Plaintiff's application and Petition to issue his medical license whereupon the Department persisited unnecessarily delaying the application process without plausible explanation and Plaintiff's counsel was unable to negotiate   agreement with the Department for Plaintiff's license to issue. As a result, almost 12 years from his initial Application, Dr. Abrahamson the Department persisted with its dilatory manner and appreciable unnecessary delays against Plaintiff, utilizing a change in the Director and its executive staff at the Department, as its reason for not acting reasonably and promptly in processing Plaintiff's application and after appreciable unnecessary delay by the Department the new Director and executive staff ultimately insisted that Plaintiff file an entirely new second application for licensure.   During this period, abiding by counsel's advice, Dr. Abrahamson refrained from practicing medicine in accordance with Section 3 of the Medical Practice Act. See 225 Ill. Comp. Stat. 60/3.

17. Dr. Abrahamson filed his more recent application with the Department in 1998. For three years, Dr. Abrahamson's  lawyers again struggled to get the Department

12

to identify what portions of his 1986 Application needed to be resubmitted, and what portions of that Application could still be used - again the Department unnecessarily causing appreciable delays before acting upon Plaintiff's application. The new application corrected alleged deficiencies noted by the Department in the previous application. After Plaintiff's counsel finally had enough sending a letter to the Department to either act upon Plaintiff's application or intimating that another lawsuit would be forthcoming to mandate processing Plaintiff's application, then in short order, within approximately a few weeks the Department finally scheduled the existing application to be processed and Dr. Abrahamson, on July 11, 2001, appeared with counsel present at a hearing before the Department's Medical Licensing Board. The Medical Licensing Board recommended denial of Dr. Abrahamson's Application for a single reason: *"due to insufficient current professional experience in the practice of medicine."* (Report of Proceedings, Sept. 18, 2002).

18. After the Department unnecessarily refusing to process Plaintiff's application and causing appreciable delays, over three years later after the most recent application was first requested to be filed by the Department; Dr. Abrahamson's most recent application was again denied by the Department; this time due solely to his alleged "insufficient current professional experience in the practice of medicine" — grounds without basis in the statute. This was a July 2001 Department Recommendation and with Corresp. fr. IDPR to Abrahamson dated July 23, 2001. Dr. Abrahamson filed a Motion to Reconsider on August 24, 2001. ***After ten weeks*** with no response from the Department, Dr. Abrahamson's counsel, Latham & Watkins, sent a letter to the Department requesting a meeting with then Director Sherman to discuss the application and Motion to Reconsider. (Corresp. From Attorney Cherney to IDPR dated November

13

5, 2001). On January 8, 2002, having received no reply from the Department in approximately five months, Dr. Abrahamson's attorneys, Latham & Watkins, sent yet another letter asking for a response. (Corresp. fr. Cherney to IDPR). Again, no response whatsoever came from the Department, Plaintiff and his counsel having been patient enough, after further inaction and appreciable delays were again inflicted upon Plaintiff by the Department — that Plaintiff's counsel on behalf of Dr. Abrahamson filed a complaint for administrative review in the Chancery Court on February 15, 2002. On the same day Dr. Abrahamson filed his lawsuit against the Defendants (February 15, 2002), the Department finally decided to issue its decision denying Dr. Abrahamson's Motion to Reconsider its denial — (IDPR Order of Feb. 15, 2002). In its order, the Department reiterated that its denial of Dr. Abrahamson's application was based on *"insufficient current professional experience in the practice of medicine."* Neither the initial denial nor the denial of the Motion to Reconsider documented any means for Dr. Abrahamson to come into compliance with the Board's qualification/finding — which was expressly contrary to the IL. Medical Practice Act of 1987. Consequently, the appreciable dilatory delays by the Department, and now the Defendants' insistence upon depriving Dr. Abrahamson of his livelihood by invoking Sect. 60/3 of the Act, take together with Defendants' refusal to provide Dr. Abrahamson with any direction as to how he could possibly "cure" the MLB's alleged deficiencies, collectively taken together inhibited any possible action Plaintiff could have taken to further enhance his medical qualifications to the Department, apart from what he already was doing as reported to the MLB/Department — keeping abreast of current trends in medicine and surgery and abiding by Sect. 60/3 as imposed by Defendants.

14

19. As stated above, the Department denied Dr. Abrahamson's license on the basis that he lacked "*current professional experience*" in the practice of medicine. Absent such "current professional experience," the Department concluded that Dr. Abrahamson was not "professionally capable of practicing medicine with reasonable judgment, skill and safety," as required by Section 9(B)(4) of the Medical Practice Act, 225 ILCS 60/9(B)(4).

20. In response to Dr. Abrahamson's February 15, 2002 complaint for administrative review, after briefing by the parties, a hearing was held in the Circuit Court of Cook County on September 18, 2002. On September 18, 2002, Judge McGann ruled in favor of Dr. Abrahamson and summarily reversed the Department's denial of Dr. Abrahamson's Application for a physician and surgeon's license in Illinois. Ruling for Dr. Abrahamson, Judge McGann found that "[w]hile a lack of current professional experience may be an element of professional capacity, those terms are not and cannot be equated." (Report of Proceedings, September 18, 2002 and Order). The Court reversed the Department's decision, remanding the application to the Department "to conduct a hearing as to Dr. Abrahamson's professional capacity to practice medicine." Judge McGann concluded that "professionally capable" under the plain language of Section 9(B)(4) *does not mean* "current professional capacity." Interpreting Section 9(B)(4), the Court reasoned that, "[w]hile a lack of current professional experience may be an element of professional capacity, *those terms are not and cannot be equated*." (Exh. 1, Record of Proceedings, Sept. 18, 2002. Accordingly, Judge McGann concluded, "It appears to this Court that professionally capable means that as a result of an individual's training and experience, an applicant can practice medicine with reasonable judgment, skill, and safety." (*Id.* at 35:5-9.) To equate "professional

15

capacity" with "current professional experience" would, in Judge McGann's words, *"make individuals such as Dr. Abrahamson a medical version of Yossarian caught in a bureaucratic black hole with 22 doors, each leading nowhere."* emphasis added.

21. While having reversed the Department, at the same time, the Chancery Court retained jurisdiction of its "remand" as stated in open Court due to the Department's perpetual repetitive transgressions pertaining to Dr. Abrahamson's medical licensure.

22. Judge McGann specified how the Medical Practice Act required the Department to treat Dr. Abrahamson and his Application in light of the Department having improperly statutorily imposed a lack of "current professional experience" without the Department justifying such an imposition upon Dr. Abrahamson — contrary to the Act. Judge McGann observed that both Section 9(B)(4) and Title 68 of the Illinois Administrative Code, Section 1285, "anticipate situations . . . where an applicant has not been currently professionally active." (Record of Proceedings, Sept. 18, 2002) Under such circumstances, "Section 9(B)(4) provides for the *granting of a medical license* subject to additional testing, training, or remedial education." (Thus, Judge McGann interpreted Section 9(B)(4)'s second paragraph to mean that "Any individual who has graduated from medical school more than two years from the date of application can have his or her license *conditioned upon completion of whatever additional training, remedial education, or testing the Board may require to prove sufficient current professional experience,* or the Board itself can conduct an oral investigation to satisfy itself." Judge McGann noted that the Department stipulated that Dr. Abrahamson appear before the Board, whereupon Dr. Abrahamson did comply appearing before the

Board, and the Board although, it had every opportunity to do so, did not "conduct an oral investigation to satisfy itself" — emphasis added.

23. Judge McGann remanded Dr. Abrahamson's Application to the Department "with directions to conduct a hearing (*underline inserted*) as to Dr. Abrahamson's professional capacity to practice medicine within 90 days of today's date and to file its findings with this Court within that time." (Record of Proceedings, Sept. 18, 2002). The hearing "shall consider what if any *additional training, remedial education, or testing may be necessary to allow Dr. Abrahamson to demonstrate [present] capacity to practice medicine* as required by the statute." In the subsequent months, Dr. Abrahamson repeatedly and perpetually communicated to the Department his ***willingness to accept a limited license***, pursuant to the Board's authority, under which he would not be involved in patient care. (Corresp. fr. Plaintiff's counsel James Cherney to the Department's attorney Michael McGivern). These proposals were offered in an attempt to accommodate the Board's concerns and meet Dr. Abrahamson's need to practice his profession and have a livelihood; but to date the Department has been unwilling and purposefully unnecessarily refused to consider them. On December 18, 2002, in response to Judge McGann's order that it conduct a "hearing" regarding Dr. Abrahamson's professional capacity, the Medical Licensing Board ***purported*** to have met, without Dr. Abrahamson or his lawyers present, and as a result issued its December 18, 2002 Recommendation ("**Recommendation**") to the Director. Within the Recommendation, the Board outlined requirements for Dr. Abrahamson to receive his medical license, including completion of the current United States Medical Licensing Examination ("USMLE") and completion of at least 24 consecutive months of additional residency, although the Defendants did not stop there. Further, the Board's

recommendation improperly expanded the bases on which it made its initial recommendation. For example, the Board attempted to buttress its initial recommendation of denial by observing ***incorrectly*** that "Dr. Abrahamson previously participated in training programs that he did not complete. . . ." This statement is clearly without factual basis; the record clearly shows that Dr. Abrahamson successfully completed three years of residency at three highly regarded medical centers with certificates of completion signed by each Chairmen of each of Plaintiff's surgical residency program. Indeed, Dr. Abrahamson's Application includes three letters confirming completion of each of his three years of excellent surgical training at prestigious renowned medical centers.

24. The Defendants' Recommendation was approved and converted into an order (the "December Order") by then IDPR Acting Director Patricia Daniels on December 27, 2002. On January 8, 2003, the December Order was filed by Defendants with the Circuit Court of Cook County. In response to the December Order, on February 26, 2003, Dr. Abrahamson filed (with the Chancery Court) a Supplemental Brief In Support of His First Amended Complaint for Administrative Review (the "Supplemental Brief"). The Supplemental Brief highlighted the fact that the Board's Recommendation was formed without conducting any proceeding whatsoever involving Dr. Abrahamson or his counsel; ostensibly which could not even be remotely considered a **"hearing,"** and that Dr. Abrahamson was given no notice whatsoever of any hearing or opportunity to present his position and Dr. Abrahamson was unnecessarily deprived by Defendants to contradict inaccurate and harmful inflammatory prejudicial erroneous statements illicitly made and concocted by Defendants at the Department's purported "hearing." Dr. Abrahamson's Supplemental Brief also highlighted the fact that several highly

prejudicial erroneous statements were purposefully and unnecessarily unilaterally presented to the Medical Licensing Board by the Department at the purported hearing (contrived by the Department), and that the Board relied upon those erroneous statements in issuing its Recommendation.      For example, the Recommendation included the following statement in context of Dr. Abrahamson's participation in accredited residency programs: "*The Board notes that Dr. Abrahamson previously participated in training programs that he did not complete....*" This statement is clearly without factual basis and was false, as Dr. Abrahamson has successfully completed three years of surgical residency at three highly regarded and esteemed medical centers. Indeed, Dr. Abrahamson's application includes three letters confirming completion of each of his three years of surgical training.   There is no evidence to support the Board's statement, and the opposite conclusion is clearly evident from the record.      The Recommendation contains additional misstatements.  For example, in deciding that Dr. Abrahamson is not professionally capable to practice medicine, the Board finds that Dr. Abrahamson "could have engaged in other activities related to the field of medicine but not requiring licensure." In making this finding, the Board ignored the fact that Dr. Abrahamson *did* engage in other activities.  Due to the fact that he graduated more than five years prior to his application, see Ill. Admin. Code tit. 68 § 1285.95, Dr. Abrahamson provided a statement of his continuing medical skills as required by the Act.   Although the Department recognized that Dr. Abrahamson has conducted the activities listed in his statement of continuing medical skills, it made no finding regarding why Dr. Abrahamson's activities render him professionally incapable of practicing medicine. The Department made this conclusion despite the fact that its own regulations provide for exactly these types of activities to maintain adequate

19

professional capacity. <u>See</u> Ill. Admin. Code tit. 68 § 1285.95.

25. Additionally, the Recommendation erroneously states that the three-day FLEX exam — which Dr. Abrahamson successfully passed — was not a "national" exam. This is incorrect. The FLEX "was a test instrument for medical licensure recognized by all states and a number of other jurisdictions until 1994." Indeed, as indicated on his Application, Dr. Abrahamson sat for and passed the FLEX in South Dakota, and it was given in multiple states on the same day, and then applied for licensure in Illinois based upon his results from the 1985 South Dakota three day FLEX Exam. The USMLE has replaced the FLEX, however, Illinois continued to accept the FLEX for licensure when his application was submitted to the Department. *See* 68 IAC § 1285.60(a)(4) ("The Department **will accept** the following combinations of examinations completed proper to January 1, 2000: (A) FLEX Component 1 taken prior to January 1, 1995 and FLEX Component 2 taken prior to January 1, 1994. . .") (emphasis added). Thus, it has already been determined by the Department's own regulations that the FLEX Exam is adequate and accepted.

26. In response to Plaintiff's Supplemental Brief to the Chancery Court complaining of the above illicit acts purposefully perpetrated by Defendants upon Dr. Abrahamson, the Department acknowledging its illicit conduct; it had to agree to grant Dr. Abrahamson's request for a hearing as originally ordered by Judge McGann on September 18, 2002 , and again the Department unnecessarily caused a seven month appreciable delay pertaining to the Chancery Court ordered remand, and; on April 7, 2003, Judge McGann issued an Agreed Order pertaining to the Department actually conducting a "**hearing**". Subsequently, the parties disagreed over how the hearing would be conducted and over whether or not the Department's own Rules of Practice in

20

Administrative Hearings would apply. Increduously, the Department took the position that its own Rules of Practice ** would <u>not</u> apply, and Dr. Abrahamson steadfastly refused to appear at an unidentified hearing that was not by the Department's own Rules. Again, due to Defendants' purposeful unnecessary dilatory tactics and appreciable delays refusing to apply their own Rules — no hearing of any sort was held pursuant to the April 7, 2003 Agreed Order.

27. Judge McGann soon thereafter issued ***a Second Order*** to the Defendants remanding Dr. Abrahamson's Application for Hearing. Increduously, three years and six months after Judge McGann ordered the Defendants to conduct a "Hearing", on March 4, 2005, Judge McGann ***again*** reversed the Department's denial of Dr. Abrahamson's Application, based on the Department's exclusion of Dr. Abrahamson from the November 2002 purported "hearing." Due to the Department's purposeful refusal to abide by Judge McGann's September 18, 2002 Order, the Court ***again*** remanded Dr. Abrahamson's Application for hearing, this time providing the Department with the following ***specific instructions***:

> "For the reasons stated in open Court on February 17, 2005, and for the reasons stated in open Court on September 18, 2002 at the hearing on Plaintiff's Petition for Judicial Review of the final order of the Illinois Department of Professional Regulation denying the Petitioner's application for a license to practice medicine, this matter is remanded to the Department with directions to conduct a hearing as stated in open Court regarding Dr. Abrahamson's *present* professional capacity to practice medicine within 120 days from February 17, 2005 and to file its findings with the Court at that time." (Order, March 4, 2005, ¶ 3.)

28. Critically, in open Court on February 17, 2005, analogous as he did on September 18, 2002, Judge McGann reiterated the Medical Licensing Board's obligations under Section 9(B)(4) for an applicant who, like Dr. Abrahamson, met all of

21

the educational, training, and testing requirements for licensure, but who had not

practiced medicine for more than two years prior to the application:

> And my reading of the statute is that if the Board does not find that that evidence is satisfactory to satisfy his burden ***because he has met every other criteria*** *they then must tell him that he can obtain a license conditioned upon complying with the following requirements.* And then they should explain why those requirements are appropriate to their decision that he has not complied with – satisfied them.... (Transcript of Proceedings, Feb. 17, 2005)

### Proceedings On <u>Second Remand</u>:

29. A hearing on Dr. Abrahamson's present capacity to practice medicine took

place on June 8 and 9, 2005. On July 7, 2005, the Department's Administrative Law

Judge Kubiatowski issued her Report And Recommendation (the "ALJ Report"). In the

ALJ Report, Judge Kubiatowski recommended that Dr. Abrahamson's Application be

denied. In reaching that recommendation, ***the Department's*** Administrative Law

Judge completely discounted Dr. Abrahamson's lengthy testimony under oath regarding

his present professional capacity, finding that Dr. Abrahamson "was not a credible

witness." According to the ALJ Report, Dr. Abrahamson testified that he was the only

surgical physician the first night that he was on traumatology service during his

residency with the University of Maryland School of Medicine in Baltimore, that he ran

the emergency room for Harvard Medical Center's Boston City Hospital, and that he was

a chief doctor for that hospital during his residency with Harvard's Deaconess Surgical

Center. (ALJ Report, at 11-12.) Dr. Abrahamson's testimony is undisputed and was not

contested ***by any witness whatsoever*** nor was it impeached on cross-examination

by anyone. Nevertheless, the Department's Administrative Law Judge found that "[I]t is

difficult to believe that he ran the emergency room in hospitals in both Maryland and

Massachusetts as a second and third year resident." (*Id.* at 23.) Likewise, the

22

Department's Administrative Law Judge discounted Dr. Abrahamson's undisputed testimony regarding excellent letters of recommendation that he obtained from the doctors with whom he worked on his residencies, simply stating that, "none of these other doctors testified." (*Id.*)

30. After summarizing the evidence, discounting Dr. Abrahamson's testimony, and giving "some weight" to the testimony of Sandra Dunn ***a non-health professional employee of the Department***, and the Department's *sole witness*, the Department's Administrative Law Judge ruled that Dr. Abrahamson "did not prove by a preponderance of the evidence that he is entitled to a license as a physician and surgeon in the State of Illinois pursuant to Section 9(B)(4) of the Act." (ALJ Report, at 33.) Repeating the same critical past errors of the Department, the Department's Administrative Law Judge again equated "professionally capable" with "current professional capacity." She recommended denial of Dr. Abrahamson's Application on the basis that he "did not prove that he has the ***present*** professional capacity to practice medicine with reasonable judgment, skill and safety." (ALJ Report, at 34 — emphasis added).

31. In addition to contradicting Judge McGann's interpretation of the statute and Judge McGann's specific instructions to the Department in open court on two separate occasions, first on September 18, 2002, and second on February 17, 2005, the Department's Administrative Law Judge (like the Defendants) completely disregarded Judge McGann's instructions and did not make any findings whatsoever regarding what, if any, "additional training, remedial education, or testing" would be necessary to allow Dr. Abrahamson to demonstrate present professional capacity to practice medicine. Instead, the Department's Administrative Law Judge stated, "[a]ny future suggestions

23

for re-application for a medical license in terms of possible testing, involvement in any programs or re-training of any sort would most appropriately come from the Medical Licensing Board, which has the expertise on the current and detailed requirements for new applicants." (Exh. 4, ALJ Report, at 37.) **

32. Despite the Department's Administrative Law Judge's deferral of the issue, the Medical Licensing Board did not make any findings regarding what if any "additional training, remedial education, or testing" would be necessary to allow Dr. Abrahamson to demonstrate present professional capacity — again Defendants causing unnecessary appreciable dilatory delay contrary to the Act. Instead, the Department redacted its previous Recommendation of August 11, 2005 (previously summarily rejected as non-compliant both with the Act and with the Chancery Court ordered remands) and conveniently adopted the findings of fact, conclusions of law, and recommendation of the ALJ Report, recommending that Dr. Abrahamson's Application be denied. (Recommendation, Aug. 11, 2005 at 1-2.)

33. Amazingly, again the Department purposefully persisted with dilatory tactics; unnecessarily, purposefully, and flagrantly causing further appreciable delay contrary to the Act in refusing to conduct the prompt hearing, "*within 90 days*" as originally ordered on September 18, 2002 by the Chancery Court, and instead; after a two-day ALJ hearing (without a MLB Member present during the bulk of the two days), and; after the ALJ Report of July 7, 2005, and; after the Medical Licensing Board's Recommendation of **August 11, 2005**; the parties, after three years of appreciable delays unnecessarily caused by the Defendants, **again** found themselves back in exactly the same posture that they were in **as of September 18, 2002**. The Department had once again with recidivism of causing purposeful illicit tacit appreciable delays, directly contrary to the

24

implicit law of the IL. Medical Practice Act of 1987, and thereby again denied with this tortious obdurate misconduct Dr. Abrahamson his medical license based on the premise Judge McGann had ***already rejected***: lack of "present professional capacity." And, as it did before, the Department failed to tell Dr. Abrahamson what if any "additional training, remedial education, or testing" it would require of him to demonstrate "present professional capacity." Dr. Abrahamson due to the Defendants' dilatory acts, purposefully causing appreciable unnecessary delays to further impede Dr. Abrahamson's medical licensure lost several additional years of livelihood, while the Department again reverted to a position that Judge McGann repeatedly found unacceptable on administrative review of the Defendants. Defendants were undeterred.

### Dr. Abrahamson's Motion for Rehearing

34. Dr. Abrahamson promptly sought rehearing of the Medical Licensing Board's Recommendation on three grounds: (1) the Medical Licensing Board's Recommendation ignored – utterly and completely – Judge McGann's interpretation of Section 9(B)(4) of the Medical Practice Act, expressed twice in open court on two separate occasions, September 18, 2002, and February 17, 2005, and the clear and unambiguous requirements it imposes on the Medical Licensing Board and the Department when considering an applicant in Dr. Abrahamson's situation; (2) the Recommendation failed to consider the express statutory alternative of allowing Dr. Abrahamson to practice under a restricted conditional or probationary license, an alternative which the Licensing Board, the Disciplinary Board and the Department has offered to other practitioners whose "capacity to practice medicine with reasonable judgment, skill and safety" has been called into question and an alternative which, under the 14th Amendment to the United States Constitution, must be applied equally to Dr.

25

Abrahamson; and (3) by accepting the erroneous credibility determination presented in the Department's Administrative Law Judge's Report and Recommendation, in which the Department's Administrative Law Judge found that Dr. Abrahamson's **undisputed, unimpeached** testimony regarding his professional history "lacked credibility," the Licensing Board's Recommendation demonstrated that the unfounded bias against Dr. Abrahamson – a bias stemming from Dr. Abrahamson's legal challenge to the Department's denial of his Applications (having filed two separate lawsuits for administrative review against the Department) – permeated the entire Department, the Defendants' bias and prejudice against Dr. Abrahamson for having filed the state lawsuit against them; ostensibly the Defendants purposefully made it impossible for Dr. Abrahamson to receive a fair hearing, in accordance with due process, and thereby depriving him of his constitutionally protected rights.

### Proceedings On Third Remand:

35. On November 4, 2005, Defendant Daniel E. Bluthardt, Acting Director of the Division of Professional Regulation (a unit of the Department of Financial and Professional Regulation) agreed with Dr. Abrahamson's August 31, 2005 Motion for Rehearing and thereafter issued an Order **again** remanding the matter to the Medical Licensing Board for further deliberation by the MLB. In his Order, Acting Director Bluthardt found that the Recommendation "does not contain any recommendation relative to what, if any, additional training, education, or testing may be necessary to allow Applicant to demonstrate present professional capacity to practice medicine as required by the Illinois Medical Practice Act and its Rules." (Order, Nov. 4, 2005.) Due to Dr. Abrahamson's legal briefs filed with the State Chancery Review Court complaining therein of the Department repeatedly causing unnecessary appreciable

delays in processing Dr. Abrahamson's application and further highly inflammatory prejudicial erroneous statements inserted into the application record by Defendants and Defendants' perpetual dilatory tactics, for this reason and other sufficient reason; Acting Director Bluthardt remanded the matter to the Medical Licensing Board for "further deliberation" and to make "supplemental recommendations consistent with this Order." The Acting Director explicitly denied Dr. Abrahamson's petition for oral argument requested in Dr. Abrahamson's August 31, 2005 Motion for Rehearing.

### The Medical Licensing Board's Supplemental Recommendation on Third Remand:

36. In response to the Acting Director's Order, and without requesting any further testimony from Dr. Abrahamson, the Medical Licensing Board issued a Supplemental Recommendation on this third remand to the MLB; issued on or about December 5, 2005. In its Supplemental Recommendation, the Board recommended, without any explanation or justification, that Dr. Abrahamson ***must for the second time*** take and complete the basic examination required for licensure (Dr. Abrahamson took and passed components I and II of the three day FLEX examination), and that Dr. Abrahamson must complete an additional 24 month residency program despite the fact that Dr. Abrahamson successfully completed a total of 36 months of surgical residency at highly esteemed Medical Centers that select only the most qualified candidates.

37. Specifically, the Board recommended that in order to demonstrate present capacity to practice medicine with reasonable judgment, skill and safety, Dr. Abrahamson must prior to again applying or petitioning for a medical license, in the following sequence:

27

a) successfully complete the United States Medical Licensing Examination ("USMLE"), Steps I and II; b) obtain acceptance to a <u>Department approved</u> ACGME accredited residency program and apply to the Department for a temporary license that will permit him to participate in such a program; c) successfully participate in a Department approved ACGME accredited residency program for a minimum of 24 **consecutive months** of active training <u>in a single program</u>, and must receive credit for the entire duration of the program \*\*; d) take and pass USMLE Step III. (Supplemental Recommendation, Dec. 9, 2005.)

### Dr. Abrahamson's Second Motion for Rehearing:

38. As a supplement to the grounds raised in his initial Motion for Rehearing, Dr. Abrahamson filed Petitioner's Second Motion for Rehearing on the grounds that the Medical Licensing Board's Supplemental Recommendation: a) fails to indicate whether or not it is recommending that Dr. Abrahamson be granted a license *conditioned upon* completion of the recommended requirements, or whether it is recommending that after completing the requirements, Dr. Abrahamson must apply once again, and fails to explain the basis of whatever decision it reached; b) fails to provide any principled basis or explanation for its failure to consider granting Dr. Abrahamson a restricted or probationary license, allowing him to practice medicine under the supervision of a licensed physician, or restricting his practice to limited areas, when other physicians whose capacity to practice medicine with reasonable judgment, skill and safety has been called into question *are routinely given this option*; and c) fails to provide any principled basis or explanation for requiring that Dr. Abrahamson retake the required licensing examination and complete an additional 24 months of **consecutive residency** when other physicians who are inactive for an identical period

28

of time can obtain or reactivate their license without retaking the examinations or completing an additional 24 consecutive months residency.

**Final Order of the Director:**

39. On September 18, 2002 Judge McGann reversed the Department's denial of Dr. Abrahamson's application for licensure. After approximately four years of further unnecessary dilatory tactics by the Defendants and thereby Defendants' appreciable delays, contrary to the IL. Medical Practice Act of 1987; on August 9, 2006, Defendant Daniel E. Bluthardt, former acting Director of the Division of Professional Regulation, issued a Final Order denying Dr. Abrahamson's Motions for Rehearing, making four findings in support thereof (the "Final Order").

40. First, Acting Director Bluthardt found that "the Supplemental Recommendation of the Medical Licensing Board has complied with my previous Order to make recommendations relative to what additional training, education, and testing that is necessary to allow Applicant to show that he has the professional education required by the Medical Practice Act of 1987." *Id.*

41. Second, former acting Director Bluthardt found that "the Applicant has failed to meet the requirement found in Section 9(B)(2) and Section 11(A)(2)(a)(iii) of the Medical Practice Act of 1987 which requires that an applicant 'has completed a course of postgraduate clinical training of not less that 24 months, as approved by the Department in that despite the total number of years the Applicant has spend in various courses of postgraduate clinical training, the Applicant never completed any of those courses." — plainly unsupported by the record and untrue.

42. Third, former acting Director Bluthardt found that Dr. Abrahamson failed to show that he is "professionally capable of practicing medicine with reasonable judgment

skill and safety" as an "individual who has not been actively engaged in a formal program of medical education during the 2 years immediately preceding" his Application as found in Section 9(B)(4) of the Medical Practice Act of 1987.

43. Fourth, without plausible explanation, Bluthardt rejected Dr. Abrahamson's argument that he be granted a "restricted" or "probationary" license.

44. Further, the Department on August 9, 2006 caused an *adverse action report* to be entered in the national Healthcare Integrity and Protection Data Bank indicating that the Department had denied Dr. Abrahamson a license. The Department further reported that the length of its action was "**indefinite**" and that the basis for its action was "failure to meet the initial requirements for a license." During the multiple remand proceedings ordered to Defendants, by the Chancery Review Court Judge McGann, the Defendants purposefully, flagrantly, and perpetually failed to satisfactorily comply with the multiple Chancery Court Orders. By perpetually, purposefully, and unnecessarily not promptly completing Court Ordered remands ordered by Judge McGann Defendants refused to comply with the Act and the Chancery Court. In the interim, Judge McGann was transferred from the Chancery Division of the State Court to be Presiding Chief Judge of the Law Division. Judge James Henry was assigned Judge McGann's seat in the Chancery Division

### Judge Henry's Memorandum Opinion and Order.

45. Germane to the instant lawsuit in this Federal District Court; on February 26, 2007, Plaintiff caused to be filed with the Chancery State Court, Plaintiff's Motion, that was uncontested by the Department in the Chancery Court, entitled; *"PETITIONER'S MOTION TO FILE MEMORANDUM OF CLARIFICATION AND RESERVATION INSTANTER"* wherein Dr. Abrahamson explicitly preserved in the state Court his right

— to submit his Constitutional claims to this Federal District Court ("**preservation**") in the event that the state review Court were to rule in favor of the State, on questions of State law — which Dr. Abrahamson's preservation of his constitutional claims were expressly preserved for exclusive consideraton by this Federal District Court. This preservation was *uncontested* by counsel for the Department and Plaintiff preserved all of his constitutional claims for exclusive consideration by this Federal District Court which uncontested Motion was granted by Judge Henry in open state Chancery Court in a hearing held before Judge Henry on or about Thursday, February 29, 2007.

46. On September 13, 2006, Dr. Abrahamson filed a Motion for Leave to File a Second Amended Complaint for Administrative Review in the Chancery Court. The motion was granted on September 18, 2006. After full briefing on the issues presented, on June 26, 2007, Judge Henry issued his Memorandum Opinion and Order affirming the Department.

47. Contradicting Chancery Court Judge Patrick McGann's prior rulings; Judge Henry found, that he was faced with a mixed question of law and fact and applied the "**clearly erroneous**" standard of review. The foregoing, was directly contrary to Judge McGann's prior ruling(s) (specifically, that Chancery Court Judge McGann ruled the Court was presented with a strict question of law). Despite the foregoing, Judge Henry affirmed the Department's outright denial of Dr. Abrahamson's Application, ignoring Judge McGann's interpretation of the statute as requiring the Department to grant Dr. Abrahamson a license conditioned upon further training, testing and remedial education necessary to establish his present capacity. Judge Henry allowed the Department, in the course of the proceedings **after two reversals of the Directors' Orders and after two remands by the trial court (Judge McGann),** to far

exceed the appropriate scope of remand as originally ordered by Chancery Court Judge McGann. Judge Henry inexplicably, also allowed the Department to develop additional grounds (outside the scope of the consistent trial court's/Judge McGann's remand Orders) for denial of Dr. Abrahamson's application for licensure that were inconsistent with the Medical Licensing Board's initial findings and recommendation.

### The Appellate Court's Opinion.

48. Dr. Abrahamson promptly filed his Notice of Appeal on July 23, 2007, within 30 days of the June 26, 2007 Order. In his appeal brief, Abrahamson raised three issues:

(1)     Whether the Circuit Court Judge improperly used the "clearly erroneous" standard of review to reject Dr. Abrahamson's attempt to enforce Judge McGann's interpretation of the Medical Practice Act, Section 9(B)(4).

(2)     Whether the Department may, under the Medical Practice Act, *in light of* having caused unnecessary appreciable delays and dilatory tactics acting as a "de facto" suspension and thereby *denying* an applicant's license to practice medicine where the applicant has satisfied all of the statutory requirements for licensure and the Department causing the Applicant not being able to be actively engaged in the practice of medicine during the 2 years immediately preceding their application, and whether, under such circumstances, the Medical Practice Act requires the Department to *grant* the application conditioned upon the applicant's completion of such additional testing, training, or remedial education as the Licensing Board may deem necessary in order to establish the Applicant's present capacity to practice medicine with reasonable judgment skill and safety.

32

49. Whether the final Order of acting Director Bluthardt exceeded the scope of Judge McGann's March 4, 2005 explicit Order by making findings and entering impositions upon Dr. Abrahamson - contrary to Chancery Court Judge McGann's instructions.

50. On December 9, 2008, the Appellate Court of Illinois, First Judicial District, Second Division, affirmed the circuit court of Cook County. While the Appellate Court agreed that Abrahamson's statutory argument should be reviewed on a *de novo* basis, the court disagreed with Abrahamson's interpretation (***not having ruled on Dr. Abrahamson's constitutional rights — having been expressly preserved for the Federal District Court's consideration***). The Court concluded that the Department had the discretion under Section 9(B)(4) of the Medical Practice Act, 225 ILCS 60/9(B)(4) (West 1996), to offer Abrahamson a conditional or restricted license, the Department acted within the discretion permitted by the statute in outlining the steps which are required to demonstrate his capacity to practice medicine and denying his application until those steps are completed. Constitutional deprivations caused by Defendants in Dr. Abrahamson's odyssey inflicted by Defendants in applying for his medical license from Defendants were solely raised in the state court "***in light of***" Defendants trampling Plaintiff's constitutional rights — they ***were not considered*** in the state court; as this was expressly reserved by Plaintiff for review and deliberation in this Federal District Court. The Appellate Court entered the Order under appeal on December 9, 2008 and Dr. Abrahamson did not file a petition for rehearing to the Illinois Appellate Court.

51. On January 9, 2009 Dr. Abrahamson filed a petition for leave to appeal to the Illinois Supreme Court to grant leave to appeal from the Order dated December 9,

2008, entered by the Appellate Court of Illinois, First Judicial District, in *Bruce M. Abrahamson, M.D. v. Illinois Department of Financial and Professional Regulation, and Daniel Bluthardt, Director of the Illinois Department of Financial and Professional Regulation*, No. 1-07-2045. Dr. Abrahamson filed this petition to the state Supreme Court in order to exhaust his administrative review — in the state court.

52. On April 29, 2009 the mandate of the Illinois Supreme Court issued to the state Appellate Court denying Petitioner's petition for leave to appeal to the Illinois Supreme Court.

53. Germane to the instant lawsuit is the undisputed and uncontroverted (by Defendants) fact that Plaintiff, Dr. Abrahamson, in the State Chancery Court properly preserved all of his federally protected constitutional rights for federal jurisdiction and redress in federal court and expressly did not adjudicate Plaintiff's federally protected constitutional rights in the state court. The Department mutually agreed to this stipulation as entered in the Chancery Court as specifically stated, *Supra*.

54. To this day the Defendants persist in extending Plaintiff's ordeal by imposing further impediments to wrongfully deprive Plaintiff of his livelihood and refusing to issue Plaintiff his medical license in any capacity. Plaintiff can never regain the decades lost in his enjoyment of his life and livelihood from Defendants' perpetual tortious obdurate misconduct. This lawsuit seeks redress for those injuries.

### Dr. Abrahamson's Damages.

55. In serving years awaiting Defendants to cease and desist from their persistence in utilizing dilatory tactics and specious hurdles to further impede Plaintiff from obtaining his license and to be exonerated, Dr. Abrahamson was wrongfully deprived of his liberty and property right of a livelihood for more than half of his adult

life. Plaintiff was stripped of the various pleasures of basic human experience, which all free people enjoy as a matter of right. Plaintiff missed out on the ability to marry, raise a family, share holidays, births, and other life events with loved ones, friends and colleagues in his profession. As a result of his loss of liberty and property right for almost twenty-five years, Dr. Abrahamson lost his fundamental freedom to live one's life as an autonomous human being, and he must now attempt to rebuild his life at an advanced age, all without the benefit of the fullness of life experiences and deprived by Defendants of his professional livelihood that ordinarily equip adults for that task.

56. Plaintiff has had to rely upon his parents for sustenance to counter the unwarranted opposition Defendants have unnecessarily inflicted upon him. In June of 2002 Plaintiff's Father died after having undergone multiple critical illnesses and surgeries with Plaintiff having had to defer offering financial remuneration to his Father for his Father working always to assist Plaintiff during his many years of education and training. Similarly, now Plaintiff's Mother is elderly, widowed, has many medical and surgical illnesses and Plaintiff struggles to make certain that his infirm Mother is cared for after she too worked her entire life to financially provide for Plaintiff's long education and training in medicine and surgery.

57. This long-running ordeal has caused psychological pain, intense emotional distress, physical sickness, humiliation, embarrassment, depression, deprivation of the enjoyment of life, sleep disruption, inability to concentrate, complete distrust and fear of this Department, deprivation of both employment opportunities and deprivation of the accumulation of Social Security work credits, anxiety, and needless shame. Plaintiff unnecesarily was compelled to endure many years of wrongful restraint from practicing his chosen profession including being subjected to degrading erroneous

35

mischaracterization of Plaintiff's character, such as being labeled as 'of a character likely to deceive and defraud the public'. All of this has caused the need for over two decades of legal representation, which Plaintiff cannot afford.

58. Dr. Abrahamson seeks redress for his injuries, including compensatory damages, as well as attorneys' fees and costs.

### COUNT I — 42 U.S.C. § 1983 — DUE PROCESS

59. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

60. As described more fully above, each of the individually named Defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to liberty, his property right, and to a fair prompt hearing without due process of law.

61. In the manner described more fully above, the named Defendants' and its employees and agents deprived Plaintiff of his constitutional right to a fair prompt hearing as repeatedly ordered by the Chancery Court pertaining to the 2001 Application ("Application") whereafter the Court ordered remand for hearing on the Application the Department violated Plaintiff's right to due process by not promptly reaching a final determination after the initial Application hearing by withholding supportive materials to Plaintiff's application, engaging in subornation of concocting erroneous mischaracterizations pertaining to Plaintiff's medical training and education, all prejudicial to Plaintiff, the coercion of the Department to produce false evidence against Dr. Abrahamson and other actions as described herein. These individuals also engaged in the unduly suggestive defamatory procedures detrimental to Dr. Abrahamson's

issuance of his medical license, as described above and herein.

62. The above-described misconduct directly resulted in Dr. Abrahamson being denied the right to a fair and prompt hearing (as ordered by the Chancery Court), being unduly deprived of his medical license without due process of law, and having his liberty taken away for approximately 25 years in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

63. The "de facto" suspension of Dr. Abrahamson from his livelihood caused by Defendants was constitutionally infirm under the Due Process Clause of the Fourteenth Amendment in that Defendants acted in an unprecedented extremely dilatory manner and perpetually refused to act promptly, refused to promptly conclude the Chancery Court ordered remand/hearing, without their appreciable delay —

the Department failed to act with requisite promptness waiting until August 9, 2006 to issue a final decision — contrary to law.

64. The deprivations most likely could not have occurred without the specific acquiescence of the Defendant Bluthardt and the Department's Office in furtherance of their policy of depriving foreign medical graduates of their right to due process under the law regardless of guilt or innocence.

65. As a result of this violation of Plaintiff's constitutional right to liberty and to a fair and prompt hearing without due process of law, Dr. Abrahamson suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

65. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

66. The misconduct described in this Count was also undertaken pursuant to the policy and practice of the Department, the IDPR and the IDFPR, in the manner described more

fully above. In this way, the Department and Defendant Bluthardt also violated Dr. Abrahamson's rights through the actions of its agents by maintaining policies and practices that were a moving force driving the foregoing constitutional violations.

66. As a result of these actions Plaintiff's constitutional rights were violated, and Plaintiff suffered injuries, including but not limited to the loss of liberty and property, as well as the right to a fair prompt hearing, as is more fully alleged above.

### COUNT II — 42 U.S.C. § 1983 — FAILURE TO INTERVENE

67. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

68. In the manner described above, during the constitutional violations described above, the individual Defendants stood by without intervening to prevent the misconduct, including but not limited to, the deliberate withholding of supportive evidence showing Plaintiff's actual qualifications and the fabrication of evidence.

69. As a result of the individual Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Dr. Abrahamson suffered pain and injury, as well as emotional distress, as is more fully alleged above. These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

70. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights. 72. The misconduct described in this Count was undertaken pursuant to the policies and practices of; the IDPR, the IDFPR, the State of Illinois, and the State of Illinois Attorney General's Office in the manner described in preceding paragraphs.

38

71. The above-described misconduct directly resulted in Dr. Abrahamson being denied the right to a fair and prompt hearing, being deprived of Plaintiff's professional livelihood without due process of law, and having his liberty and property taken away for approximately 25 years in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

72. The deprivations most likely could not have occurred without the specific acquiescence of the Defendant Daniel E. Bluthardt, the IDPR, the IDFPR, the State of Illinois, and the State of Illinois Attorney General's Office in furtherance of their policy of depriving foreign medical graduates of their right to due process under the law regardless of guilt or innocence.

73. As a result of this violation of Plaintiff's constitutional right to liberty and to a fair hearing without due process of law, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

74. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights. 77. The misconduct described in this Count was also undertaken pursuant to the policy and practice of the IDPR, the IDFPR, the State of Illinois, and the Illinois Attorney General's Office in the manner described more fully above. In this way, the IDPR, the IDFPR and Defendant Bluthardt also violated Plaintiff's rights through the actions of its agents by maintaining policies and practices that were a moving force driving the foregoing constitutional violations.

75. As a result of these actions Plaintiff's constitutional rights were violated, and Dr. Abrahamson suffered injuries, including but not limited to the loss of liberty as well

as Plaintiff's property, and the right to a fair and prompt hearing, as is more fully alleged above.

## COUNT III — 42 U.S.C. § 1983 — CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS

76. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

77. After the deprivation of Plantiff's livelihood, the individual Defendants reached an agreement amongst themselves to blame Dr. Abrahamson for Defendants' tortious obdurate misconduct refusing to issue Plaintiff a medical license in any capacity. The agreement reached by the Defendants deprived Plaintiff of his constitutional right to a fair, prompt, unbiased hearing and to liberty and to property with Defendants' depriving Plaintiff of due process of law. The parties also conspired to ruin the life and livelihood of Plaintiff by subjecting Dr. Abrahamson to perpetual unnecessary appreciable delays based on allegations that Defendants could not find Plaintiff's medical license application, could not process Plaintiff's medical license application, and after finally processing the application concocting fabricated evidence to the detriment of Dr. Abrahamson and without due process of law, as described in the various Paragraphs of this Complaint.

78. Independently, before and after Dr. Abrahamson's first denial of his most recent 2001 application, each of the individually named Defendants further conspired, and continue to conspire, to deprive Plaintiff of supportive application materials, including but not necessarily limited to; letters of completion of three years of residency and laudatory letters of recommendation, to which Plaintiff was lawfully entitled and

which would have led to his right to a prompt hearing and also be disburdened of the Department's false charges as described in the various paragraphs of this Complaint.

79. In this manner, the individually named Defendants, acting in concert with other unknown co-conspirators, including persons who are members of either the IDPR, the IDFPR, or the Illinois Attorney General's Office, have conspired by concerted action to accomplish the deprivation of Dr. Abrahamson's liberty and property right to a fair and prompt hearing by unlawful means.

80. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

84. As a direct and proximate result of the illicit prior agreement referenced above, Dr. Abrahamson's constitutional rights to liberty and a fair prompt hearing were violated, and he suffered financial damages, as well as severe emotional distress and anguish, as is more fully alleged above.

81. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Dr. Abrahamson.

82. The misconduct described in this Count was also undertaken pursuant to the policies and practices of both the IDPR and the Illinois Attorney General's Office in the manner described more fully in preceding paragraphs, and was tacitly ratified by policy-makers for the IDPR, the IDFPR, and the State of Illinois with final policymaking authority.

41

## COUNT IV — STATE LAW CLAIM — MALICIOUS
## PROSECUTION

83. Each of the Paragraphs of this Complaint is incorporated as if restated fully
herein.

84. The individually named Defendant officers individually and/or jointly and in
conspiracy caused Dr. Abrahamson to be improperly subjected to judicial proceedings
for which there was no probable cause. These judicial proceedings were instituted and
continued maliciously, resulting in injury, and all such proceedings were unprompt in
that they were perpetually and repetitively dilatory in nature, prejudicial to Plaintiff's
application for medical licensure, and terminated in Dr. Abrahamson's case in a manner
indicative of further attempting to impede Dr. Abrahamson from ever receiving his
medical license and practicing his chosen profession. Each of the individually named
Defendants officers were instrumental in the initiation and/or perpetuation of the
prejudicial, unnecessary, and malicious prosecution of Dr. Abrahamson.

85. The individually named Defendants accused Dr. Abrahamson of not being
credible or worthy of belief when Plaintiff testified pertaining to his post-graduate
surgical residency experiences at Rush, Maryland, and Harvard; which surgical
residency testimony was uncontroverted by anyone; knowing those accusations to be
without probable cause, and they made statements to the Director(s) of the Department
with the intent of exerting erroneous prejudicial influence to institute and continue
unnecessary judicial proceedings, resulting in further obstacles and impediments to
Plaintiff being licensed, and essentially making Plaintiff's life what was described by
Chancery Court Judge Patrick McGann, making Dr. Abrahamson's nightmare invoked
by Defendants: "..... **individuals such as Dr. Abrahamson a medical version of**

**Yossarian caught in a bureaucratic black hole with 22 doors, each leading nowhere." emphasis added.**

86. Statements of the individually named Defendants regarding Dr. Abrahamson's alleged culpability pertaining to not completing his training, not being forthright pertaining to his senior surgical experiences at Maryland and Harvard, and not having passed his "FLEX" licensure examinations were made with knowledge that said statements by Defendants, to the Director(s) of the Department, were false and perjured. In so doing, the Defendants fabricated evidence and withheld information that resulted in Plaintiff's medical license being unnecessarily further withheld by the Department, inflicting further unduly unnecessary harsh punishment upon Plaintiff, and unnecessarily further depriving Plaintiff of a livelihood.

87. Defendant Rod R. Blagojevich was briefed by Plaintiff of the Defendants' tortious obdurate misconduct as more fully set forth above, Defendant Blagojevich did appoint Defendant Blumhardt as acting director of the Department, and Defendant Blagojevich did promise and assure Plaintiff, that he shall intercede and stop the unconscionable torts being committed by the other Defendants and by the Department — and instead Defendant Blagojevich ignored Defendants' misconduct and allowed Defendants and the Department to persist with their torts as described more fully above.

88. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Dr. Abrahamson.

89. As a result of this misconduct, Dr. Abrahamson sustained, and continues to sustain, injuries including pain and suffering, as well as emotional distress, as is more fully alleged above.

## COUNT V — STATE LAW CLAIM — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

90. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

91. The acts and conduct of the individual Defendants as set forth above were extreme and outrageous. The individual Defendants intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Dr. Abrahamson, as is more fully alleged above.

92. Said actions and conduct did directly and proximately cause severe emotional distress to Dr. Abrahamson, and thereby constituted intentional infliction of emotional distress.

93. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff.

94. As a proximate result of Defendants' wrongful acts, Dr. Abrahamson suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

## COUNT VI — STATE LAW CLAIM — CIVIL CONSPIRACY

95. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

96. As described more fully in the preceding paragraphs, the individual Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

44

97. Plaintiff expressly preserves herein the right to name any additional defendant(s) within this cause of action that acted individually and/or in concert with the named Defendants to commit tortious obdurate misconduct against Plaintiff as described herein — when such additional defendant(s) may become cognizable to Plaintiff during production and discovery in the instant cause of action.

98. In furtherance of the conspiracy, the individual Defendants committed overt acts and were otherwise willful participants in joint activity.

99. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Dr. Abrahamson.

100. As a proximate result of Defendants' conspiracy, Dr. Abrahamson suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

### COUNT VII — STATE LAW CLAIM — RESPONDEAT SUPERIOR

101 Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

102. In committing the acts alleged in the preceding paragraphs, each of the individual Defendants were members of, and agents of, the Illinois Division of Professional Regulation—an agency of the State of Illinois—and all were acting at all relevant times within the scope of employment and under color of law.

103. In committing the acts alleged in the preceding paragraphs, Defendant Daniel E. Bluthardt, Defendant Ronald L. Johnson, M.D., Defendant William J. Rademacher, D.C., Defendant Bennett Leventhal, M.D., Defendant Jane Jackman, M.D., Defendant Denis D. Palmer, D.O., John Doe - Unknown Medical Licensing Board Member No. 1 - scribbled "Blab", Defendant Robert M. Vanecko, M.D., and all other

unknown Medical Licensing Board Members signing/supporting the December 9, 2005 Supplemental Recommendation to Director of the IDPR - **See: Exhibit A**, were each agents of the Illinois Division of Professional Regulation — an agency of the State of Illinois — and were acting at all relevant times within the scope of their employment and under color of law.

104. Defendant Rod R. Blagojevich was governor of the State of Illinois from January 2003 through January 2009 and in deceiving Plaintiff as more fully set forth above, Defendant Blagojevich was an agent of the State of Illinois — and was acting at all relevant times within the scope of his employment and under color of law.

105. The Defendant State of Illinois is liable as principal for all torts committed by its agents.

106. The Defendant Illinois Department of Financial and Professional Regulation is liable as a necessary party for the torts committed by its agents.

## COUNT VIII — STATE LAW CLAIM — INDEMNIFICATION

107. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

108. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are individually liable within the scope of their employment activities.

109. The Defendant Daniel E. Bluthardt, former Acting Director of the IDPR , was an employee of this Illinois Department (an agency/department of the State of Illinois), who acted within the scope of his employment in committing the misconduct described herein.

46

110. Defendant Ronald L. Johnson, M.D., Defendant William J. Rademacher, D.C., Defendant Bennett Leventhal, M.D., Defendant Jane Jackman, M.D., Defendant Denis D. Palmer, D.O., John Doe - Unknown Medical Licensing Board Member No. 1 - scribbled "Blab", Defendant Robert M. Vanecko, M.D., and all other unknown Medical Licensing Board Members signing/supporting the December 9, 2005 Supplemental Recommendation to Director of the IDPR **See: Exhibit A**, were each agents of the Illinois Division of Professional Regulation — an agency of the State of Illinois — and were acting at all relevant times within the scope of their employment and when committing the misconduct described herein.

## **Prayer for Relief**

**WHEREFORE**, Plaintiff, Bruce Abrahamson, M.D., respectfully requests that this Court order the following:

1) the Defendants should be ordered to strike from the former acting Director Bluthardt's August 9, 2006 Final Order the finding that Dr. Abrahamson did not satisfy the requirements of Section 9(B)(2) and 11(A)(2)(a)(iii), reversing and/or vacating, former Acting Director Bluthardt's final August 9, 2006 administrative decision, and order the Department to issue Plaintiff his medical license in some capacity, and;

2) that the Department expunge the August 9, 2006 Adverse Action Report caused to be entered in the national Healthcare Integrity and Protection Data Bank indicating that the Department had denied and deprived Plaintiff of a license.

3) enter judgment in Plaintiff's favor and against Defendants in the amount of $500,000,000 in compensatory damages, to compensate for loss of income, loss of enjoyment of life, emotional harm, pain and suffering, punitive damages against each

and every individually named Defendant, as allowable under the law, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff. Plus costs and attorneys' fees against the Defendants, as well as any other relief this Court deems appropriate.

Respectfully submitted:

By: _Bruce Abrahamson, M.D._ , Dated: March 21, 2011
Bruce Abrahamson, M.D.
175 E. Delaware Place, #8510
Chicago, IL. 60611 Phone: 312-943-7777    E-mail: mikeabraha@aol.com

## CERTIFICATE OF SERVICE

I, Bruce Abrahamson, depose and state that on March 23, 2011, before 5:00 p.m., I caused the foregoing complete **Complaint and Fed. Rule Civ. Proc. 4(d) (1) Waiver Forms- RE: Summons** for the above Defendants and for their Respondeat Superior to be mailed from 175 E. Delaware PL., #8510, Chicago, Illinois, 60611 via first class, proper postage prepaid, to:


Donald W. Seasock, Acting Director
Department of Financial and Professional Regulation
Division of Professional Regulation
100 West Randolph Street, Suite 9-300
Chicago, IL 60601

Attested to By:  Bruce Abrahamson                Dated: March 23, 2011


Complaint_v_indiv-s_idfpr_et.al._1983_lawsuit_03-09-11

Bruce Abrahamson v. IL. Dept. of Finanacial & Professional Regulation, et. al.

# EXHIBIT A

STATE OF ILLINOIS
DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION
DIVISION OF PROFESSIONAL REGULATION

In Re: Petition for Hearing of     )
                                   )
BRUCE ABRAHAMSON        ) No. 200201339-1
Unlicensed         Petitioner   )

## 20 DAY NOTICE

TO:    Bruce Abrahamson              Thomas E. Dutton
        175 E. Delaware, #8510      Greenberg Traurig
        Chicago, IL 60611            77 W. Wacker Drive, #2500
                                      Chicago, IL 60601

      PLEASE TAKE NOTICE that the Medical Licensing Board of the Department of Financial and Professional Regulation of the State of Illinois, upon Remand by the Director for the sole purpose of providing a supplemental recommendation, has made a supplemental recommendation to the Director in addition to the prior recommendation that your Application for Licensure as a Physician and Surgeon in Illinois be DENIED. A copy of the Medical Licensing Board's Supplemental Recommendation of the Medical Licensing Board to the Director is attached hereto.

      YOU ARE HEREBY NOTIFIED that you have 20 days from the date this Notice is mailed to present to this Department your written Motion for a Rehearing. Said Motion shall specify the particular grounds for a Rehearing.

      The Director of this Department may grant oral argument on this Motion if he deems it necessary for a clearer understanding of the issues presented.

              DEPARTMENT   OF   FINANCIAL   AND
              PROFESSIONAL REGULATION of the State of
              Illinois

              BY:_____
                 SADZI M. OLIVA
                 Chief of Medical Prosecutions

Sadzi M. Oliva
Attorney – Medical Prosecutions
Department of Financial and Professional Regulation
100 West Randolph Street, Suite 9-300
Chicago, Illinois 60601
312/814-4517

# EXHIBIT A

### STATE OF ILLINOIS
### DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION
### DIVISION OF PROFESSIONAL REGULATION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| THE PETITION FOR LICENSURE OF | ) | No. 2002013391 |
| | ) | |
| BRUCE ABRAHAMSON, | ) | |
| | ) | |
| APPLICANT. | ) | |

## SUPPLEMENTAL RECOMMENDATION OF THE MEDICAL LICENSING BOARD TO THE DIRECTOR

This matter having come before the Medical Licensing Board of the Department of Financial and Professional Regulation of the State of Illinois upon the Remand by the Director for the sole purpose of providing a supplemental recommendation relative to what, if any, additional training, education or testing may be necessary to allow the Applicant to demonstrate present professional present capacity to practice medicine as required by the Illinois Medical Practice Act and its Rules and, after reviewing the record of hearing, a majority of its members hereby render the following Supplemental Recommendation to the Director:

1. Based on the individual facts of this case, the Board recommends that Dr. Abrahamson must meet the following requirements in the following sequence in order to demonstrate present capacity to practice medicine with reasonable judgment, skill and safety as required by the Illinois Medical Practice Act and its Rules:

   a. Successful completion of the United States Medical Licensing Examination ("USMLE"), Steps I and II;

   b. Upon passage of USMLE I and II, Dr. Abrahamson must obtain acceptance to a Department approved ACGME accredited residency program and apply to the Department for a temporary license that will permit him to participate in such a program;

   c. Dr. Abrahamson must successfully participate in a Department approved ACGME accredited residency program for a minimum of 24 consecutive months of active training in a single program. Successful participation includes the receipt of credit for the entire duration of training;

d. After successful completion of a clinical training program, Dr.
   Abrahamson must take and pass USMLE Step III.

DATED THIS 5th DAY OF December , 2005.

CHAIRMAN, Ronald L. Johnson, M.D.

_____          _____
MEMBER                           MEMBER

_____          _____
MEMBER                           MEMBER

_____          _____
MEMBER                           MEMBER

2

d. After successful completion of a clinical training program, Dr.
Abrahamson must take and pass USMLE Step III.

DATED THIS _5th_ DAY OF _December_ , 2005.

_____
CHAIRMAN, Ronald L. Johnson, M.D.

_____
MEMBER

_____                    _____
MEMBER                                             MEMBER

_____                    _____
MEMBER                                             MEMBER

2

d. After successful completion of a clinical training program, Dr.
   Abrahamson must take and pass USMLE Step III.


DATED THIS 5th DAY OF December, 2005.


_____
CHAIRMAN, Ronald L. Johnson, M.D.


_____
MEMBER

_____
MEMBER


_____
MEMBER

_____
MEMBER


_____
MEMBER

*William J. Rademacher, D.C.*
MEMBER

d. After successful completion of a clinical training program, Dr.
   Abrahamson must take and pass USMLE Step III.

DATED THIS _5th_ DAY OF _December_, 2005.

_____
CHAIRMAN, Ronald L. Johnson, M.D.

_____          _____
MEMBER                                     MEMBER

_____          _____
MEMBER                                     MEMBER

_____          _____
MEMBER                                     MEMBER

2

d. After successful completion of a clinical training program, Dr.
Abrahamson must take and pass USMLE Step III.

DATED THIS _5<u>th</u>_ DAY OF _December_, 2005.

_____
CHAIRMAN, Ronald L. Johnson, M.D.

_____
MEMBER

_____
MEMBER

_____
MEMBER

_____
MEMBER

_____
MEMBER

_____
MEMBER

2

d. After successful completion of a clinical training program, Dr.
   Abrahamson must take and pass USMLE Step III.

DATED THIS _5th_ DAY OF _December,_ 2005.

_____
CHAIRMAN, Ronald L. Johnson, M.D.

_Tarke Jackman MD_
_____          _____
MEMBER                                    MEMBER

_____          _____
MEMBER                                    MEMBER

_____          _____
MEMBER                                    MEMBER

2

STATE OF ILLINOIS      )
                               )   ss:
COUNTY OF COOK     )

      UNDER PENALTY of perjury, as provided by law pursuant to Section 1-109 of the Illinois Code of Civil procedure, the undersigned certifies that I caused the attached 20 Day Notice to be deposited in the United States mailbox located at 100 West Randolph Street, Suite 9-300, Chicago, Illinois 60601 and by mailing same by certified mail at 100 West Randolph Street, Suite 9-300, Chicago, Illinois 60601, before 5:00 p.m. with proper postage prepaid on the 12th day of December, 2005 to all parties at the addresses listed on the attached documents.

                                        _____
                                            Affiant